10 F.3d 700
 62 USLW 2301, 17 Employee Benefits Cas. 1826
 Curtis GUIDRY, Plaintiff-Appellee and Cross-Appellant,
v.
SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL NO. 9,
Defendant-Intervenor-Appellant and Cross-Appellee,
Sheet Metal Workers National Pension Fund; Sheet Metal
Workers' Local Unions and Councils Pension Plan,
Defendants and Cross-Appellees,
Sheet Metal Workers' Local No. 9 Pension Fund, Party Under
Rule 19, F.R.C.P., Defendant-Intervenor and Cross-Appellee,
and
Edward J. Carlough; Robert T. Stringer; C.T. Roff; Cavet
Snyder; Edward J. Carlough; Cecil D. Clay;
George J. Cuddihy; Urie E. Williams,
Jr.; Richard J. Scott,
Trustees, Defendants.
 Nos. 92-1018, 92-1034.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 4, 1993.
 
 Eldon E. Silverman of Elrod, Katz, Preeo, Look, Moison & Silverman, P.C., Denver, CO, for plaintiff-appellee and cross-appellant.
 Joseph M. Goldhammer (Ellen M. Kelman with him, on the briefs) of Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Denver, CO, for defendant-intervenor-appellant and cross-appellee.
 Raymond J. Sweeney (Ellen Ranzman and Michael Wolf of Katz & Ranzman, Washington, D.C., with him, on the brief) of Raymond J. Sweeney & Associates, North Andover, MA, for defendant-intervenor-appellant and cross-appellee.
 Before TACHA and BRORBY, Circuit Judges, and BROWN,* Senior United States District Judge.
 BRORBY, Circuit Judge.
 
 
 1
 The issue in this case is whether Employee Retirement Income Security Act of 1974 (ERISA) Sec. 206(d)(1), 29 U.S.C. Sec. 1056(d)(1) (1988), and its coordinate section in the Internal Revenue Code, I.R.C. Sec. 401(a)(13)(A) (1986), prohibit garnishment of Mr. Guidry's pension benefits after the benefits have been paid and received.
 
 I. BACKGROUND
 
 2
 The relevant facts are undisputed.[1] Prior to 1981, appellee Curtis Guidry was the chief executive officer of appellant Sheet Metal Workers International Association, Local No. 9 (Local 9). As an employee of Local 9, Mr. Guidry was entitled to receive benefits from certain pension funds associated with Local 9. The litigation underlying this appeal began as an action for benefits brought by Mr. Guidry under ERISA against the cross-appellee Pension Funds (Pension Funds). The Pension Funds' defense to Mr. Guidry's claim for benefits was that he had forfeited the right to his pensions because of criminal misconduct against Local 9.
 
 
 3
 Local 9 intervened in the action asserting an interest in the property which was the subject of the litigation. That interest was based upon Local 9's common law and Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. Secs. 401-531 (1988), claims against Mr. Guidry. Local 9 asserted six claims against Mr. Guidry, five of which were settled by stipulation for entry of judgment. The claims for which a stipulation was signed included violation of fiduciary duties under 29 U.S.C. Sec. 501(a); conversion; actual fraud; money had and received; and negligence. The stipulation entered a $275,000 judgment in favor of Local 9. Local 9's sixth claim for relief sought imposition of a constructive trust over any pension funds due to Mr. Guidry and was not settled.
 
 
 4
 In this posture the case was heard by the district court. The district court and this court ultimately agreed Mr. Guidry was entitled to his pension under ERISA and that Local 9 was entitled to the imposition of a constructive trust under the LMRDA. Guidry, 641 F.Supp. at 360; Guidry, 856 F.2d at 1457. The United States Supreme Court, however, reversed the imposition of the constructive trust, ruling that the anti-alienation provisions of ERISA superseded Local 9's claim for a constructive trust. Guidry, 493 U.S. at 375-76, 110 S.Ct. at 686-87.
 
 
 5
 Pursuant to orders of remand, the district court entered judgment ordering payment of Mr. Guidry's back and future pension payments. The Pension Funds then began making Mr. Guidry's monthly pension payments into an account which he established at the First Interstate Bank of Denver for that purpose. Subsequently, Local 9 made efforts to collect its judgment against Mr. Guidry both through monthly garnishment of the bank account at the First Interstate Bank and through a seizure of past due pension payments which were tendered to Mr. Guidry in Texas by the Pension Funds. With respect to the monthly payments, the Pension Funds and Local 9 arranged that a representative of the Pension Funds would make out a deposit slip to Mr. Guidry's account, and then Local 9 would seek to garnish the funds immediately after deposit. Mr. Guidry, in turn, attempted to garnish certain accounts of Local 9 claiming the tender in Texas to be invalid.
 
 
 6
 The parties then entered into a series of stipulations concerning both the ongoing monthly pension payments and payments of past due amounts. The parties agreed that ongoing payments would be deposited into Mr. Guidry's First Interstate Bank account and would be subject to the initial garnishment filed by Local 9 without a formal garnishment each month. The parties also agreed to remove past due amounts from the Registry of the United States District Court for the Southern District of Texas, where they were stored after an attempted delivery by the pension funds to Mr. Guidry, and to deposit them into the First Interstate Bank account subject also to the initial garnishment. An additional stipulation authorized removal of some of the funds to two other financial institutions, but all funds remained subject to the initial garnishment.
 
 
 7
 Under the stipulations, the district court was presented with the issue of whether Local 9 was entitled, under ERISA, to garnish bank accounts designated as containing, and in fact containing, only the proceeds of pension payments received by Mr. Guidry. The district court held that the ERISA exemption from garnishment applies to pension proceeds "so long as the proceeds are clearly identified as such and have not been commingled with other funds or used for the acquisition of assets." The court stated that its decision was mandated by the law of the case, citing Guidry, 493 U.S. at 365, 110 S.Ct. at 680. The court also held that "[t]he attempt of the Funds to satisfy the judgment against them by the tender made in Texas ... was not a legally effective tender of payment of the judgment and is a nullity."
 
 
 8
 Upon receipt of the district court's order, Mr. Guidry removed all funds from the bank accounts which were subject to the stipulations of the parties.
 
 II. CONTENTIONS OF THE PARTIES
 
 9
 The parties to this bitter and interminable litigation have locked horns yet again over the district court's order. Local 9 claims the anti-alienation protection of ERISA Sec. 206(d)(1) does not extend to funds once the plan participant asserts dominion over them. In support, Local 9 cites applicable Department of the Treasury regulations, principles of statutory construction, and the common law of trusts. Mr. Guidry, on the other hand, claims by the "law of the case" he is to receive his pension benefits and that the garnishment proceeding at issue here is contrary to the Supreme Court's mandate in Guidry.[2] It is also his position that the appeal is in part moot; that Local 9 conceded the issue in this case; and that in any event because the purpose of ERISA is to safeguard a stream of income, interdicting that income at the moment of payment is prohibited by ERISA Sec. 206(d)(1). Mr. Guidry also claims alternative exemptions under state law, and cross-appeals claiming the district court erred in not awarding him attorney's fees under ERISA.
 
 III. MOOTNESS
 
 10
 Following the district court's order invalidating the writ of garnishment, Mr. Guidry removed the funds from the bank accounts that were subject to the stipulations of the parties. Local 9 sought a stay of the district court's order and return of the funds. Local 9's motions were denied and this court affirmed. Because the funds are no longer in the account, Mr. Guidry contends that this appeal is at least in part moot. We disagree. As to future benefit payments to be received by Mr. Guidry, the parties agree this appeal presents a live issue. Mr. Guidry concedes that "even if the anti-alienation issues are decided adversely to [Mr.] Guidry, the effect would not be moot, since it would apply to all subsequent payments to [Mr.] Guidry during his lifetime." As to the past payments, including the lump sum originally tendered in Texas and ultimately paid in Colorado, Local 9's claim is only moot, as Mr. Guidry contends, if this court is without the power to order a return of the past payments or if it presupposes facts not in the record to the effect that the payments have been dissipated and cannot be returned. We decline to make either finding. Without commenting on the shape of any appropriate relief that might be granted by the district court on remand from this decision, we find this appeal justiciable.
 
 IV. LAW OF THE CASE
 
 11
 The district court held the "law of the case" compelled it to bar garnishment of the pension benefits received by Mr. Guidry, the reason offered being that since the Supreme Court ordered Mr. Guidry receive a "stream of income," it is impermissible to garnish pension income paid and received by Mr. Guidry and in an account established by him for the receipt of those funds. In defending this conclusion, Mr. Guidry rather colorfully states that if his pension may be garnished after received:
 
 
 12
 [t]he "Employee Retirement Income Security Act of 1974" should be retitled the "Creditor Income Security Act of 1974," since pensions become simply a fund that cannot be touched by either the debtor/worker or the creditor, until the debtor's retirement at which time it matures into a fund for the creditor, not the pensioner.
 
 
 13
 In support, he recites from Guidry, as follows:
 
 
 14
 [ERISA] [s]ection 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.
 
 
 15
 Guidry, 493 U.S. at 376, 110 S.Ct. at 687.
 
 
 16
 We now consider this contention. The "law of the case" doctrine requires every court to follow the decisions of courts that are higher in the judicial hierarchy. Mason v. Texaco, Inc., 948 F.2d 1546, 1553 (10th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992); Heathcoat v. Potts, 905 F.2d 367, 370 (11th Cir.1990); see generally 18 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure Sec. 4478 (1993). The doctrine applies to issues previously decided, Quern v. Jordan, 440 U.S. 332, 347, n. 18, 99 S.Ct. 1139, 1148, n. 18, 59 L.Ed.2d 358 (1979), either explicitly or by necessary implication. Heathcoat, 905 F.2d at 370; Cherokee Nation v. Oklahoma, 461 F.2d 674, 678 (10th Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 489 (1972). When further proceedings follow a general remand, the lower court is " 'free to decide anything not foreclosed by the mandate' " issued by the higher court. Hicks v. Gates Rubber Co., 928 F.2d 966, 971 (10th Cir.1991) (quoting 1B J. Moore, J. Lucas, T. Currier, Moore's Federal Practice p 0.404 (1988)).
 
 
 17
 A. Not explicitly decided.
 
 
 18
 The "law of the case" did not compel the district court to bar the garnishment proceedings in this case. The issue was not decided because no benefits had been paid to Mr. Guidry at the time the Supreme Court decided his case. The Supreme Court, in considering a constructive trust, (1) held that ERISA Sec. 206(d)(1) applied to garnishment proceedings, Guidry, 493 U.S. at 371-72, 110 S.Ct. at 684-85; and (2) reversed the imposition of a constructive trust over the pension benefits of Mr. Guidry in the plan, id. at 376-77, 110 S.Ct. at 687. This case, in contrast, involves a writ of garnishment issued by a Colorado court upon the garnishee, First Interstate Bank, subjecting the pension funds of Mr. Guidry in the account to the process of garnishment. This case, therefore, is factually distinct from Guidry in the critical respect that the garnishment process is over funds that Mr. Guidry has received, whereas the constructive trust invalidated by Guidry was over benefits in the plan. The validity of the post-payment garnishment proceeding was not resolved because no pension benefits had been paid to Mr. Guidry at the time the case was decided. Cf. Chapman v. National Aeronautics & Space Admin., 736 F.2d 238, 242 (5th Cir.), cert. denied, 469 U.S. 1038, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984) (appellate court did not intend to decide a factual issue not within its province).
 
 
 19
 Likewise, the Supreme Court did not explicitly decide in dicta that its holding with respect to the constructive trust extended as well to benefits paid from the plan and received by the participant.[3] We look first at the phrase: "stream of income." Guidry states the purpose of ERISA Sec. 206(d)(1) is to safeguard a "stream of income." It is apparently Mr. Guidry's contention that a "stream of income" is neither a "stream" nor an "income" if it is garnished at the moment of payment.[4] A natural reading of this language, however, is that Mr. Guidry has a right to receive periodic retirement payments due him under the pension plan. The periodic payments are the "stream of income." Moreover, the income is "safeguarded" even if it is garnished upon payment insofar as the right to receive payments is secure. As Guidry refers only to a "stream of income" that must be received, and not to the disposition of the income after it was received, we fail to see how the "law of the case" bars garnishment of received income. The payments do not lose their character as income because they are used to satisfy debts.
 
 
 20
 Next, we consider the Supreme Court's language: "Section 206(d) reflects a considered congressional policy ... even if that decision prevents others from securing relief for the wrongs done them." Guidry, 493 U.S. at 376, 110 S.Ct. at 687. Mr. Guidry apparently claims this language decided Local 9 was prevented from securing relief by means of garnishment generally. In Mr. Guidry's opinion, the Court decided that he won and Local 9 lost, and therefore any further attempt of Local 9 to garnish income received by Mr. Guidry under the pension plan is barred. This reading misstates Guidry. The quoted passage in plain terms refers only to the decision of that case. As the opinion contains no language barring Local 9 from seeking other relief against Mr. Guidry, such action is not foreclosed by the "law of the case." The Court did not decide Local 9 was generally not entitled to relief, but only that the type of relief selected by the district court and approved by this court, a constructive trust, was impermissible even if a rightful creditor was thereby deprived of a remedy.
 
 
 21
 Finally, if the Court had intended to explicitly decide that income could not be garnished after payment, it would have stated the conditions under which such income retained its protected status. See Philpott v. Essex County Welfare Bd., 409 U.S. 413, 416, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973) (payments retain character as protected monies so long as available for use and not converted into permanent investments); Porter v. Aetna Casualty & Sur. Co., 370 U.S. 159, 162, 82 S.Ct. 1231, 1233, 8 L.Ed.2d 407 (1962) (same).
 
 
 22
 B. Not implicitly decided.
 
 
 23
 We discern three grounds under the "law of the case" doctrine by which we might conclude an issue was implicitly resolved in a prior appeal, as follows: (1) resolution of the issue was a necessary step in resolving the earlier appeal; (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal; and (3) the issue is so closely related to the earlier appeal its resolution involves no additional consideration and so might have been resolved but unstated.[5]
 
 
 24
 The first ground is not even arguably present in this case. The Supreme Court reversed the imposition of a constructive trust over funds in the possession of the fund trustee. This decision did not rely upon, nor did it reach in any way as a predicate, the impact of ERISA Sec. 206(d)(1) on benefits already paid to a plan participant. As such, resolution of the issue in this case was not a necessary element of the decision in the prior appeal.
 
 
 25
 The second ground is a closer matter. Would garnishment of Mr. Guidry's retirement income after he receives the income abrogate the prior appeal? Mr. Guidry claims "the Guidry decision [would be] gutted, if a pension fund were allowed to pay benefits into a bank account, with the judgment debtor immediately then garnishing those funds." This argument, however, pertains to the purpose of ERISA, not to the "law of the case" doctrine. While it might be consistent with Guidry to bar garnishment of Mr. Guidry's received benefits, the "law of the case" applies only to what was actually decided, either explicitly or implicitly. An issue was implicitly decided if its resolution would necessarily abrogate the effect of the prior appeal, but not if one resolution or another would merely be consistent with the prior outcome. Here, Mr. Guidry is incorrect that a decision allowing garnishment would necessarily abrogate Guidry because Guidry would still protect his benefits in the pension plan.
 
 
 26
 Such protection is not worthless, as Mr. Guidry believes; in fact, it is similar in effect to a common law spendthrift trust. Under the common law "[a] spendthrift trust ... does not involve any restraint on alienability or creditors' rights with respect to property after it is received by the beneficiary from the trustee, but rather is merely a restraint with regard to his rights to future payments under the trust." George T. Bogert, Trusts, Sec. 40 at 148-49 (6th ed., 1987). And,
 
 
 27
 [i]t has never been the object of the spendthrift trust to restrain the beneficiary from spending income or principal after it has been paid to him by the trustee, or to restrain his creditors from taking trust income or principal from him after he has obtained it from the trustee. The sole object of these trusts is to prevent anticipation of trust income or principal by assignments of the right to receive future income or principal or from attempts by creditors of the beneficiary to reach such right.
 
 
 28
 Id. at 149-50. Accordingly, Mr. Guidry's argument that garnishment of his received benefits would abrogate Guidry and render ERISA Sec. 206(d)(1) meaningless is mere hyperbole.
 
 
 29
 The third potential ground is also not satisfied. A different balancing of interests is involved in this appeal than in Guidry. In Guidry the court balanced equitable considerations against the clear language of the statute. Here, the statute is not clear, as discussed infra, and moreover a different weighing of factors may be appropriate in a case where the pension income to be protected has been received than is appropriate in a case where the benefits are still in the plan. Thus, whether we characterize ERISA Sec. 206(d)(1) as an absolute bar to garnishment of income so long as the income retains its character as monies, Philpott, 409 U.S. at 416, 93 S.Ct. at 592, or as a bar to the alienation of benefits in the plan, policy choices are involved beyond those implicated by Guidry. For the foregoing reasons, we conclude the issue on this appeal was neither explicitly nor implicitly resolved by that case.
 
 V. INTERPRETATION OF THE STATUTE
 
 30
 It is not the "law of the case" that ERISA Sec. 206(d)(1) bars garnishment of Mr. Guidry's benefits after they have been received; therefore the text of ERISA Sec. 206(d)(1) is controlling. In statutory interpretation we look to the plain language of the statute and give effect to its meaning. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); Ute Distribution Corp. v. United States, 938 F.2d 1157, 1162 (10th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 2273, 119 L.Ed.2d 200 (1992). The objective of reading the statute is to determine the intent of Congress. Davidowitz v. Delta Dental Plan of California, 946 F.2d 1476, 1480 (9th Cir.1991) ("Any construction of ERISA ... must be consistent with Congressional intent."). The text of the statute itself is the best evidence of that intent. West Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 98, 111 S.Ct. 1138, 1146, 113 L.Ed.2d 68 (1991). If the statute is clear, that is the end of our inquiry. Aulston v. United States, 915 F.2d 584, 589 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2011, 114 L.Ed.2d 98 (1991).
 
 
 31
 The statute is not clear. ERISA Sec. 206(d)(1) states: "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." The unclear language is the phrase: "benefits provided under the plan." The issue is whether "benefits provided under the plan," in ERISA Sec. 206(d)(1), means the right to future payment or the actual money paid under the plan and received by the beneficiary. If "benefits" in ERISA Sec. 206(d)(1) means the right to future payments, then the garnishment of money paid out to Mr. Guidry would not be covered. If, however, "benefits" means the actual money paid to Mr. Guidry, then the funds would initially be protected by this statute.
 
 
 32
 The term "benefits" is not clear. Accordingly, we must look elsewhere to decide what meaning of "benefits" Congress had in mind in ERISA Sec. 206(d)(1).
 
 VI. AGENCY REGULATIONS
 
 33
 The Department of the Treasury has issued regulations defining "assignment" and "alienation." 26 C.F.R. Sec. 1.401(a)-13(c) (1992) [hereinafter "ERISA Regulations"]. The ERISA Regulations define "assignment" and "alienation" as "[a]ny direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary." 26 C.F.R. Sec. 1.401(a)-13(c)(1)(ii) (emphasis added).
 
 
 34
 A. Applicability of Regulations to ERISA Sec. 206(d)(1).
 
 
 35
 The authority of the Department of the Treasury to issue regulations applicable to ERISA Sec. 206(d)(1) is complex. Congress delegated broad authority to the Secretary of Labor to publish regulations under ERISA. 29 U.S.C. Sec. 1135. However, because coordinate sections are codified in the Internal Revenue Code (I.R.C.), Congress delegated to the Department of the Treasury the authority to issue regulations applicable to some of the coordinate sections of ERISA and the I.R.C. 29 U.S.C. Sec. 1202(c).[6] The section at issue in this case, ERISA Sec. 206(d)(1), was not included in the delegation to the Department of the Treasury. Id. The section is, however, in the same category as that delegation (participation, vesting, and funding). ERISA Subchapter I, Subtitle B, Parts 2 and 3; 29 U.S.C. Secs. 1051-1086. See generally Baker v. Otis Elevator Co., 609 F.2d 686, 690-91 n. 7 (3rd Cir.1979).
 
 
 36
 Notwithstanding 29 U.S.C. Sec. 1202(c), the authority to issue regulations concerning ERISA Sec. 206(d)(1) and I.R.C. Sec. 401(a)(13)(A) is now lodged in the Department of the Treasury. In 1978, President Carter, pursuant to the Reorganization Act of 1977, 5 U.S.C. Secs. 901-912, issued Reorganization Plan No. 4, Sec. 101, reprinted in 1978 U.S.C.C.A.N. 9814, transferring the authority of the Department of Labor to issue regulations under certain ERISA sections to the Department of the Treasury, including the authority to issue regulations under ERISA Sec. 206(d)(1). The validity of the transfer, however, was subject to question because the Reorganization Act contained a legislative veto provision, 5 U.S.C. Secs. 903, 906(a), which was possibly unconstitutional after I.N.S. v. Chadha, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). See E.E.O.C. v. CBS, Inc., 743 F.2d 969 (2d Cir.1984) (the unconstitutional legislative veto provision was not severable and the entire act was unconstitutional). We need not delve into these complicated issues, however, as the issues were mooted for the purposes of this case by an act of Congress, Pub.L. 98-532, 98 Stat. 2705 (1984), that ratified and affirmed each reorganization plan implemented to that date, including Reorganization Plan No. 4. See generally E.E.O.C. v. First Citizens Bank, 758 F.2d 397, 399-400 (9th Cir.), cert. denied, 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985). Accordingly, the authority of the Department of Labor to issue regulations under ERISA Sec. 206(d)(1) is now lodged in the Department of the Treasury. Hurwitz v. Sher, 982 F.2d 778, 779 n. 1 (2d Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2345, 124 L.Ed.2d 255 (1993) (No. 92-1572). Other cases have applied the ERISA Regulations for similar and related reasons. See Retirement Fund Trust of Plumbing v. Franchise Tax Bd., 909 F.2d 1266, 1285 (9th Cir.1990); General Motors Corp. v. Buha, 623 F.2d 455, 462 (6th Cir.1980); Baker, 609 F.2d at 690-91; Commercial Mortgage Ins. Inc. v. Citizens Nat'l Bank, 526 F.Supp. 510, 519-20 (N.D.Texas 1981). The Supreme Court has likewise recognized the applicability of the ERISA Regulations, but has not interpreted them. Guidry, 493 U.S. at 372, 110 S.Ct. at 685 (the Court decided ERISA Sec. 206(d)(1) applied to garnishment and stated that its decision was consistent with applicable regulations).
 
 
 37
 The regulations issued by the Department of Labor also provide the rules governing I.R.C. Sec. 401(a)(13)(A) are applicable to ERISA Sec. 206(d)(1). The Department of Labor regulations provide that the "ERISA Guidelines" include the regulations issued by the Department of the Treasury for I.R.C. Sec. 401(a)(13)(A) and that the ERISA Guidelines "govern the application of (1) the qualification requirements of the Internal Revenue Code of 1954 ... added or amended by ERISA, and (2) the requirements of the provisions of parts 2 and 3 of Title I of ERISA paralleling such qualification requirements". 29 C.F.R. Sec. 2509.75-10 (compendium of authoritative rules) (1992). We conclude the ERISA Regulations are applicable to ERISA Sec. 206(d)(1).
 
 
 38
 B. Application of the Regulations.
 
 
 39
 In the absence of clear Congressional intent, we defer to the applicable ERISA Regulations if they are reasonable and are not "arbitrary, capricious, or manifestly contrary to the statute." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); see Tataranowicz v. Sullivan, 959 F.2d 268, 275 (D.C.Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 963, 122 L.Ed.2d 120 (1993); Retirement Fund Trust, 909 F.2d at 1284. The meaning of the ERISA Regulations is clear. ERISA Sec. 206(d)(1) requires pension plans to prohibit assignment and alienation of pension benefits. The terms "assignment" and "alienation" are defined by the ERISA Regulations as "[a]ny ... arrangement ... whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan." 26 C.F.R. Sec. 1.401(a)-13(c)(1)(ii). Local 9 seeks only to enforce a judgment against Mr. Guidry by garnishing his bank account containing pension benefits paid and received; Local 9 does not seek to enforce an interest or right against the plan. Because garnishment of Mr. Guidry's received retirement income is not an action against the plan, we conclude it is not prohibited by ERISA Sec. 206(d)(1) as implemented by the ERISA Regulations. Cf. Usery v. First Nat'l Bank, 586 F.2d 107, 108-09 (9th Cir.1978) (discussing anti-garnishment provision of the Consumer Credit Protection Act, 15 U.S.C. Sec. 1673(a), and noting that the section is not limited to garnishment of the employer). We may disregard the plain meaning of the ERISA Regulations only if we find they are unreasonable.[7]
 
 
 40
 C. Regulations are reasonable.
 
 
 41
 To determine if the ERISA Regulations are reasonable we look at the same criteria we would consider in interpreting the statute if the ERISA Regulations were absent, including the structure of the statute as a whole, and the objective of the statute. See Crandon v. United States, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy."); Colorado v. Idarado Mining Co., 916 F.2d 1486, 1494 (10th Cir.1990) ("[w]e may consult legislative history as a secondary source of a statute's meaning."), cert. denied, 499 U.S. 960, 111 S.Ct. 1584, 113 L.Ed.2d 648 (1991).
 
 
 42
 1. Structure of ERISA.
 
 
 43
 The meaning of an unclear section of a statute may be clarified by its context within the statute as a whole. King v. St. Vincent's Hosp., --- U.S. ----, ----, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) (words have only a communal existence); Crandon, 494 U.S. at 158, 110 S.Ct. at 1001 (we consider not only "the particular statutory language, but ... the design of the statute as a whole").
 
 
 44
 There are few textual clues to the intended reach of ERISA Sec. 206(d)(1) in other sections of ERISA. One of the few is ERISA Sec. 206(d)(3)(A), a specific exception to ERISA Sec. 206(d)(1). The exception relates to certain domestic relation orders. It states: "[p]aragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order." (Emphasis added.) The term "qualified domestic relations order" is defined as an order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." ERISA Sec. 206(d)(3)(B) (emphasis added).
 
 
 45
 Although the above exception casts shadows over ERISA Sec. 206(d)(1), it does not conclusively establish the intended scope of the anti-alienation provision. Because the exception is for certain benefits payable under the plan, ERISA Sec. 206(d)(1) clearly prohibits alienation of benefits prior to payment as a general matter. The exception, however, is silent as to benefits already paid. It could be inferred from the omission of paid benefits that ERISA Sec. 206(d)(1) does not prohibit alienation of such benefits generally. The inference would be warranted if it was clear an exception for paid benefits was necessary to achieve the purpose of ERISA Sec. 206(d)(3)(A). In this instance, however, that is not clear, and no strong inference about the intended scope of ERISA Sec. 206(d)(1) from the exception is warranted. It is unclear whether Congress omitted benefits already paid from ERISA Sec. 206(d)(3)(A) because such benefits were not protected by ERISA Sec. 206(d)(1) in the first place, or because benefits already paid were unrelated to the purpose of ERISA Sec. 206(d)(3)(A). Without clear textual support we are hesitant to draw a conclusion. All we find is that the exception does not render the meaning of ERISA Sec. 206(d)(1) clear, but is at least consistent with the ERISA Regulations, and may support them inferentially.
 
 
 46
 Another shadow-casting section is ERISA Sec. 206(d)(2), a specific exemption to ERISA Sec. 206(d)(1) for assignments of no more than ten per cent of a benefit payment. According to legislative history for this section, "a plan must provide that benefits under the plan may not be assigned or alienated. However, the plan may provide that after a benefit is in pay status, there may be a voluntary revocable assignment (not to exceed 10 percent of any benefit payment)." House Conference Rep. No. 93-1280, reprinted in 1974 U.S.C.C.A.N. 4639, 5038, 5061. Because the legislative history refers to "after pay status" it may be inferred that Congress intended ERISA Sec. 206(d)(1) to protect benefits in payment. Although this inference is warranted, it does not reveal whether the protection was for benefits in the plan or for benefits received by the participant, or both. The phrase "pay status" seems to refer to the status of the participant and his right to receive benefits rather than to benefits that have been paid and received. Likewise, the term "assignment" suggests a diversion of part of a payment coming from the plan, rather than the assignment of part of a benefit already received. The purpose of the section apparently is to allow a plan participant to order a diversion of some of the payments coming from the plan. Because the exception does not plainly cover benefits received it does not clearly reveal the intended effect of ERISA Sec. 206(d)(1) generally. We conclude only that it is at least consistent with the ERISA Regulations insofar as it appears primarily concerned with benefits in payment before they are received by the assigning participant.
 
 
 47
 2. Objective of ERISA.
 
 
 48
 ERISA is a comprehensive statute, Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980), intended in significant part to ensure pension benefits will actually be received upon retirement by plan participants and beneficiaries. Id. at 374-75, 100 S.Ct. at 1732-33. The Court has consistently protected this purpose by "vigorously ... enforc[ing] ERISA's prohibition on the assignment or alienation of pension benefits, [and] declining to recognize any implied exceptions to the broad statutory bar." Patterson v. Shumate, --- U.S. ----, ----, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992). The purpose of the alienation provision was "[t]o ... ensure that the employee's accrued benefits are actually available for retirement purposes." House Report No. 93-807, reprinted in 1974 U.S.C.C.A.N. 4670, 4734; Misic v. Building Serv. Employees Health & Welfare Trust, 789 F.2d 1374, 1376-77 (9th Cir.1986).
 
 
 49
 Are the Regulations so inconsistent with this purpose that they are unreasonable? This is a close question. To some degree allowing garnishment of retirement income that has been paid to the plan participant will undermine Congress' desire to ensure that pension benefits are actually received when due upon retirement and available for retirement purposes. Likewise, to some degree allowing the practice works an end-run around the anti-alienation provision. Cf. Hisquierdo v. Hisquierdo, 439 U.S. 572, 583, 99 S.Ct. 802, 809, 59 L.Ed.2d 1 (1979) (order to pay benefits as received is contrary to Railroad Retirement Act, 45 U.S.C. Sec. 231m, and mechanically deprives beneficiary of benefits Congress intended for the beneficiary to receive alone).[8] However, while sheltering retirement income received by a plan participant would apparently be consistent with ERISA, it would be improper for this court to invalidate the applicable agency regulations based exclusively upon a judgment that the other of the two permissible interpretations of the statute is more consistent with the overall Congressional scheme. It is a rule of statutory construction that "[d]eciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice--and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law." Rodriguez v. United States, 480 U.S. 522, 526, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987). "[N]o legislation pursues its purposes at all costs." Id. at 525-26, 107 S.Ct. at 1393. Although it is clear Congress intended to protect pension benefits, it is unclear how far the protection was extended. The statute did not decide whether participants have priority over creditors seeking to garnish retirement income after it has been paid and received.[9] Therefore, although the ERISA Regulations are not necessarily the interpretation this court would have adopted as an original matter, they are permissible in light of Congress' failure to be specific.
 
 
 50
 We also find the Regulations are consistent with Congress' approach to the same problem in other income protection statutes. In other statutes, Congress explicitly exempted from garnishment benefits that had been paid and received by the beneficiary. For example, the Social Security Act, 42 U.S.C. Sec. 407(a) (1988), provides:
 
 
 51
 (a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
 
 
 52
 And similarly, the Veterans' Benefits Act, 38 U.S.C. Sec. 5301(a) (1991) provides:
 
 
 53
 Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.
 
 
 54
 Because Congress did not include similar explicit language protecting benefits in the related context in ERISA, we infer Congress made a deliberate decision retirement income paid and received was not thereafter protected from garnishment. A similar argument was made by then Judge Kennedy writing for the Ninth Circuit in denying application of the anti-garnishment provision of the Consumer Credit Protection Act to wages that had been paid. Usery, 586 F.2d at 111. Although not conclusive, the absence of explicit language extending to paid benefits supports the ERISA Regulations.
 
 
 55
 For the foregoing reasons, we are not prepared to say that the interpretation of ERISA Sec. 206(d)(1) in the ERISA Regulations is fundamentally antithetical to the intent of Congress or is otherwise unreasonable. The issue in this appeal involves a pure legislative choice, and as we are unable to determine whether Congress made the choice, we will defer to the agent of the legislature.
 
 
 56
 Lastly, we note this Circuit has not already decided this issue.[10] The parties also cite Tenneco Inc. v. First Virginia Bank, 698 F.2d 688 (4th Cir.1983), which briefly referenced an issue somewhat similar to that here. Tenneco is not helpful, however, as it refers to assets which had been commingled with other funds. Id. at 691.
 
 VII. ADDITIONAL CLAIMED EXEMPTIONS
 
 57
 Mr. Guidry claims additional exemptions for the pension funds in the alternative to ERISA Sec. 206(d)(1).
 
 
 58
 A. Colorado Statutes.
 
 
 59
 Mr. Guidry claims that his pension benefits paid and received are exempted from garnishment by C.R.S. Sec. 13-54-104 (1987 & Supp.1992). That section is applicable to "restrictions on garnishment" and provides that "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment ... may not exceed twenty-five percent of his disposable earnings for that week." It further defines "earnings" (of which disposable earnings are a subset) as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, avails of any pension or retirement benefits, or deferred compensation plan."[11] (Emphasis added).
 
 
 60
 The Colorado statute is preempted by ERISA. ERISA Sec. 514(a) preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C.A. Sec. 1144(a) (1985). ERISA preemption is broad. Metropolitan Life Ins. Co. v. Hanslip, 939 F.2d 904 (10th Cir.1991). A law " 'relate[s] to' a covered employee benefit plan for purposes of [ERISA] Sec. 514(a) 'if it has a connection with or reference to such a plan.' " District of Columbia v. Greater Washington Board of Trade, --- U.S. ----, ----, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992) (citing cases). Accordingly, ERISA Sec. 514(a)
 
 
 61
 pre-empts any state law that refers to or has a connection with covered benefit plans (and that does not fall within a[n] [ERISA] Sec. 514(b) exception) "even if the law is not specifically designed to affect such plans, or the effect is only indirect," and even if the law is "consistent with ERISA's substantive requirements."
 
 
 62
 Id. (citations omitted).
 
 
 63
 The Colorado exemption statute "relates to" employee benefit plans because it expressly refers to such plans. The applicable section, C.R.S. 13-54-104(1)(b), defines earnings as the "avails of any pension or retirement benefits, or deferred compensation plan." Because it is specifically applicable to ERISA pension plans it is preempted by ERISA Sec. 514(a).
 
 
 64
 It is not incongruous to hold, as we have done, that: (1) ERISA Sec. 206(d), as implemented by the ERISA Regulations, does not prohibit garnishment of plan benefits paid and received; and (2) ERISA Sec. 514(a) preempts state laws exempting such benefits from the general application of state garnishment laws. Congress was aware that ERISA benefits could be garnished--as evidenced by its adoption of ERISA Sec. 206(d)(1)--and its decision to remain silent concerning garnishment of benefits paid and received prohibits state regulation of the practice. Cf. Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988) (discussing Congress' silence with respect to garnishment of welfare plan benefits and holding that Congress' silence " 'acknowledged and accepted the practice, rather than prohibiting it' "). This is particularly true in light of the applicable ERISA Regulations. In addition, the garnishment exemption is preempted by ERISA Sec. 514(a) because it singles out ERISA benefits for special treatment. It is this singling out that preempts the Colorado anti-garnishment exception.[12] Cf. Mackey, 486 U.S. at 838 n. 12, 108 S.Ct. at 2190 n. 12. Likewise, the fact that this case is about paid benefits, and not about benefits in the plan, does not take the Colorado statute out of ERISA Sec. 514(a). A statute relating to benefits paid and received is a state law relating to an employee benefit plan.
 
 
 65
 Mr. Guidry also claims that Colorado's 100% asset exemption, C.R.S. Sec. 13-54-102 (1987 & Supp.1992), prohibits garnishment of his received benefits. That section is applicable to "exempt property" and provides that "[t]he following property is exempt [from garnishment[13] ... (1)(s) [p]roperty, including funds, held in or payable from any pension or retirement plan or deferred compensation plan, ... including pensions or plans which qualify under the federal 'Employee Retirement Income Security Act of 1974' as an employee pension benefit plan."
 
 
 66
 Although this statute expressly refers to pension benefits, we decline to interpret C.R.S. Sec. 13-54-102, or to consider if it is preempted by ERISA, because Mr. Guidry has not persuaded the court that it is applicable. The Colorado Session Law adopting amended subsection (1)(s) provided that the amendments were effective to writs of garnishment issued by a court in any action brought on or after May 1, 1991. Section 7 of Chapter 65, Session Laws of Colorado 1991. The Committee Comment to the Colorado Rules of Civil Procedure clarifies that the term "action" refers to the "original action," meaning the action giving rise to the garnishment proceeding. Colo.R.Civ.P. 103, Section 1 & Section 3, Committee Comment (Supp.1992). Because the original action in this case was initiated well before May 1, 1991, we hold that C.R.S. Sec. 13-54-102(1)(s) is not applicable to this case.
 
 
 67
 B. Texas Exemption and Federal Consumer Credit Protection Act.
 
 
 68
 Mr. Guidry claims the lump sum payment tendered in Texas is exempt under Vernon's Tex.Prop.Code tit. 5, Sec. 42.0021(a) (1992), which provides that: "[A] person's right to the assets held in or to receive payments, whether vested or not, under any ... pension ... plan ... is exempt from attachment, execution, and seizure for the satisfaction of debts."
 
 
 69
 Mr. Guidry has failed to persuade this court that under the stipulations effective in this case Texas law is applicable. We decline, therefore, to construe Texas law or to decide whether the Texas law is preempted by ERISA. In his opening brief he states: "[Mr.] Guidry ... assert[s] the Texas exemption as to the lump sum of some $191,000.00, which was attempted to be delivered in Texas, and subsequently, deposited in the Registry of the Court in Texas." In his reply brief he further states: "It is definitely appropriate to apply the Texas law, since that is [where] the lump sum was paid, and that is where [Mr.] Guidry resides."
 
 
 70
 This claim is unpersuasive. Mr. Guidry cites no law in support of his assertion that the Texas statute is applicable. He cites no law explaining how this court should apply a Texas exemption statute to a Colorado writ of garnishment, and he cites no authority with respect to the possible preemption of the Texas statute by ERISA. Moreover, the district court held that the attempted tender of the funds in Texas was invalid, and in addition, by stipulation of the parties, Mr. Guidry received the funds in an account established by him in Colorado for that purpose. For the foregoing reason we find that all issues with respect to the tender in Texas are moot. On this record, and strictly with respect to the facts of this case, we will not consider the Texas exemption statute.
 
 
 71
 As a last alternative exemption, Mr. Guidry claims the garnishment of his benefits is prohibited by the Federal Consumer Credit Protection Act, 15 U.S.C.A. Secs. 1672 and 1673 (1982).[14] However, as Mr. Guidry merely cites to the statute and does not address or distinguish contrary law, we decline to reach this issue. We assume, without deciding, that this circuit would follow the Ninth Circuit's opinion in Usery and decline to extend the anti-garnishment protection of the Federal Consumer Credit Protection Act to earnings that have been received. We withhold judgment on the issue until such case as it is properly briefed.
 
 VIII. JUDICIAL ADMISSION
 
 72
 Mr. Guidry contends that Local 9 conceded in oral argument to the Supreme Court that the garnishment proceeding in this case is barred by Hisquierdo.[15] Mr. Guidry cites the doctrine of judicial admissions in support. This argument lacks merit. " 'Judicial admissions are formal admissions ... which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.' " American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir.1988) (quoting In re Fordson Eng'g Corp., 25 B.R. 506, 509 (Bankr.E.D.Mich.1982)). Because the matter Mr. Guidry claims was admitted is a proposition of law, the doctrine of judicial admission is not applicable. Moreover, in the Tenth Circuit briefs are not part of the record, and statements made in briefs may be considered admissions at the court's discretion. Plastic Container Corp. v. Continental Plastics of Okla., Inc., 607 F.2d 885, 906 (10th Cir.1979), cert. denied, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980). We view oral argument similarly. If the doctrine were applicable, we would decline to view counsel's statement as an admission because it was not sufficiently deliberate to rise to the level of a judicial admission. Likewise, whether characterized as a "judicial admission" or not, it is not the case that Local 9 conceded the issue. In the absence of reliance, we will not bind counsel to a statement made in a prior, albeit related, appeal when the alleged concession related to an issue not presented for review in that case. Accordingly, to the extent Mr. Guidry contends Local 9 conceded the issue on this appeal, we disagree.
 
 
 73
 Mr. Guidry's argument could also be characterized as asserting the doctrine of judicial estoppel. That doctrine, recognized by some circuits, prevents a party from relying on inconsistent arguments in successive stages of litigation when the party was victorious on the point in a prior phase of the case. See generally United Mine Workers of America 1974 Pension v. Pittston Co., 984 F.2d 469, 477 (D.C.Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 3039, 125 L.Ed.2d 726, --- U.S. ----, 113 S.Ct. 3040, --- L.Ed.2d ---- (1993). Without deciding whether the doctrine applies in the Tenth Circuit, we note the criteria are not satisfied. See United States v. 49.01 Acres of Land, 802 F.2d 387 (10th Cir.1986) (doctrine of judicial estoppel not recognized by Tenth Circuit). Local 9 was not the prevailing party at the Supreme Court, nor is it apparent the Supreme Court adopted the position allegedly conceded by Local 9. As this is the case, the doctrine of judicial estoppel is not applicable. We mention it only to highlight the inapplicability of the judicial admission doctrine.
 
 IX. OTHER MATTERS
 
 74
 Next, we consider the district court's holding that the attempt of the Funds to satisfy the judgment against them by the tender in Texas was ineffective. Local 9 claims the ruling was unnecessary because the parties stipulated the funds were in the account of Mr. Guidry. We agree and vacate this part of the district court's order. Finally, we consider Mr. Guidry's cross-appeal for fees. Because he is not the prevailing party, this issue is moot.
 
 X. CONCLUSION
 
 75
 There is a distinction in the law between benefits in the plan and benefits paid and received by the participant under the plan. Cf. Usery. It is unclear from the statute whether Congress intended ERISA Sec. 206(d)(1) to cover benefits paid and received, as in the Social Security Act, 42 U.S.C. Sec. 407(a), or whether it intended the section to apply only to actions enforceable against the plan. Although we are aware garnishment in the present context may thwart Congress' intent, we cannot in the absence of clear evidence to the contrary be certain that is the case, and the applicable ERISA Regulations to which we must defer provide otherwise. We therefore hold, under the facts of this case, that ERISA provides no protection to funds paid to, and received by, the plan participant. The parties have requested this court to instruct the district court as to the shape of relief to be granted pursuant to this appeal. We decline to do so because certain essential factual matters are not in the record.
 
 
 76
 The decision of the district court is REVERSED. The case is remanded to the district court for such other and further proceedings as may be consistent with this opinion.
 
 
 77
 BROWN, Senior District Judge, dissenting.
 
 
 78
 The majority has reversed the district court's disposition of this case after finding that the Supreme Court's opinion in Guidry v. Sheet Metal Pension Fund, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782, was not binding authority as "the law of the case." Because I find that the ruling there required the district court to make the findings that it did, I must respectfully dissent.
 
 
 79
 While I agree that the Guidry case which involved a constructive trust is technically distinguishable, we still must give careful consideration to the meaning and effect the Court gave to Section 206(d) when applying it to the factual situation now before us.
 
 
 80
 Section 206(d) simply provides that "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." I do not agree with the majority finding that the meaning of such provision is "unclear." It is my opinion that the Supreme Court in Guidry has clearly interpreted that section insofar as it applies to Guidry's pension benefits.
 
 
 81
 It should first be noted that the Supreme Court reviewed the Guidry case in order to resolve conflicts among the circuits. See 493 U.S. at 371 n. 9, 110 S.Ct. at 685 n. 9, 107 L.Ed.2d at 791 n. 9. In discussing the prohibition against alienation, the Court persistently equated "garnishment" with the conduct prohibited by ERISA; and I believe that insofar as Guidry's case is concerned his "stream of income" is protected from garnishment.[1]
 
 
 82
 Given Guidry's criminal conduct, I realize that such a result in unpalatable; but the Supreme Court is on record clearly stating that the ERISA prohibition on assignment or alienation "reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them." (Emphasis supplied.) 493 U.S. at 376, 110 S.Ct. at 687, 107 L.Ed.2d at 795. At this point, the Court found that if any exceptions to this policy were to be made, then it was up to Congress to do so as has been done in the case of a "qualified domestic relations order."[2] Ibid., 493 U.S. at 376 n. 18, 110 S.Ct. at 687 n. 18, 107 L.Ed.2d at 795 n. 18. The Court gave us further guidance by warning that courts should not find equitable exceptions to legislative prohibitions:
 
 
 83
 "the creation of such exceptions, in our view, would be especially problematic in the context of an anti-garnishment provision. Such a provision acts by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended only (emphasis of the court) on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement whenever enforcement appears inequitable." (Except as noted, emphasis supplied.) 493 U.S. at 376-77, 110 S.Ct. at 687, 107 L.Ed.2d 782.
 
 
 84
 If the majority is correct in its interpretation of Section 206(d), then any state statute which exempts pension benefits covered by ERISA from garnishment, such as those found in Colorado and Texas, would be nullified.[3] 3] I am not persuaded that Congress intended this result.
 
 
 85
 I recognize that my view of the Supreme Court's findings in Guidry would lead to consequences which were not specifically addressed by that court, since all ERISA pension benefits would be protected from garnishment when deposited in the name of the beneficiary, in a separate account and not mingled with other funds. This would place ERISA pensions in the same protected category as federal benefits provided through social security, civil service, and veteran's legislation. In my view we need not reach the question of Congress' intent, because the issue of congressional intent is simply not before us. The Supreme Court has spoken on the issue, and I do not believe that we are free to reinterpret the Section 206(d) ban on garnishments as it applies to garnishment of Guidry's pension benefits. I would affirm the decision of the district court, and remand this case for additional findings on the refusal to allow attorney fees.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior United States District Judge, District of Kansas, sitting by designation
 
 
 [1]
 For the complete background of this case, see Guidry v. Sheet Metal Workers' Nat'l Pension Fund, 641 F.Supp. 360 (D.Colo.1986); Guidry v. Sheet Metal Workers Nat'l Pension Fund, 856 F.2d 1457 (10th Cir.1988); and Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990)
 
 
 [2]
 This citation and all citations to Guidry infra refer to the Supreme Court case
 
 
 [3]
 It would be improper for this court to limit Supreme Court opinions to precisely the facts of each case. McCoy v. Massachusetts Inst. of Technology, 950 F.2d 13, 19 (1st Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992). If dicta had clearly resolved the issue in this appeal we would be bound by that decision
 
 
 [4]
 Mr. Guidry relies heavily on the "stream of income" phrase, but is not specific as to why this phrase controls this case. We presume Mr. Guidry intended to make this and other related arguments
 
 
 [5]
 Cherokee held that the doctrine of the "law of the case" applies to issues implicitly resolved. While we agree, there is little guidance in the law to explain the circumstances under which an issue may be implicitly resolved. The recited factors are not intended to be exhaustive
 
 
 [6]
 The coordinate sections in the I.R.C. are substantially identical to the ERISA sections codified in the Labor Code. For example, ERISA Sec. 206(d)(1) states:
 Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.
 And I.R.C. Sec. 401(a)(13)(A) states:
 A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated.
 
 
 [7]
 Mr. Guidry did not address the application of the Regulations to this case
 
 
 [8]
 Hisquierdo does not control the outcome of this appeal as it interprets a different statute. The garnishment provision in that statute referred to "any circumstances whatsoever" and so provided more support for extending protection to benefits that had been paid. Section 231m(a) reads as follows:
 Except as provided in subsection (b) of this section and the Internal Revenue Code of 1954 [26 U.S.C.A. Sec. 1 et seq.], notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated.
 
 
 [9]
 Although the parties have not extensively briefed the legislative history of ERISA, we have uncovered no conclusive evidence Congress specifically intended the opposite of the result adopted in the ERISA Regulations The legislative history for ERISA Sec. 206(d)(1) has been described by courts as sparse and inconclusive. Coar v. Kazimir, 990 F.2d 1413, 1420 (3d Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 179, 126 L.Ed.2d 138 (1993); Ellis Nat'l Bank v. Irving Trust Co., 786 F.2d 466, 470 (2d Cir.1986); Buha, 623 F.2d at 460
 
 
 [10]
 Local 9 cites In re Harline, 950 F.2d 669 (10th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 2991, 120 L.Ed.2d 869 (1992), in which the court considered whether 11 U.S.C. Sec. 541(c)(2) included both state and federal law in the definition of applicable nonbankruptcy law. The section excludes certain interests in trust assets from a debtors' estate. The court held ERISA was applicable, and considered whether its decision rendered 11 U.S.C. Sec. 522(d)(10)(E) superfluous or meaningless. That section provides, inter alia, some protection for necessary income. We stated that Sec. 522 was not meaningless even if ERISA was applicable because "[s]ection 522 deals with distributions made from a pension plan ... [and] [e]ven if pension plan assets in the hands of a trustee are beyond the reach of creditors because not a part or the debtor's estate under Sec. 541(c)(2), distributions made from the plan to the debtor would not enjoy such protection, in the absence of exemption under Sec. 522(d)(10)(E)." Harline, 950 F.2d at 675. This appeal is not related to Harline. The Harline court only stated, in dicta, that if pension plan assets in the hands of the trustee are beyond the reach of creditors because of Sec. 541, distributions from the plan may yet be protected by Sec. 522. We mention Harline only to clarify for the purpose of this appeal it is inapposite
 
 
 [11]
 For actions commenced on or after May 1, 1991, a new definition of "earnings" is applicable which does not refer to pension benefits. See Colo.R.Civ.P. 103, Section 1 & Section 3, Committee Comment (Supp.1992) ("The Colorado Legislature amended Sections 13-54-104 and 13-54.5-101, C.R.S. (Section 7 of Chapter 65, Session Laws of Colorado 1991), which changed the definition of 'earnings' applicable only to actions commenced on or after May 1, 1991. The amendment impacts the ability to garnish certain forms of income, depending upon when the original action was commenced.") The amended section defines "earnings" as "[c]ompensation paid or payable for personal services, whether denominated as wages, salary, commission, or bonus; [or] ... [f]unds held in or payable from any health, accident, or disability insurance." It further provides that "[f]or the purposes of writs of garnishment which are the result of a judgment taken for arrearages for child support or for child support debt, 'earnings' also means workers' compensation benefits and any pension or retirement benefits." We express no opinion with respect to the amended statute as the original action in this case was commenced before May 1, 1991
 
 
 [12]
 Mr. Guidry has made no claim that the state garnishment proceeding is preempted by ERISA Sec. 514(a) and we do not consider the issue. See generally Mackey, 486 U.S. at 829, 108 S.Ct. at 2185 (state garnishment proceedings not preempted)
 
 
 [13]
 Although C.R.S. Sec. 13-54-102 only refers to attachment and execution, other sections of the Title provide that the exemptions apply to garnishment actions. C.R.S. Sec. 13-54-106(3) provides that: "[t]he exemptions provided by this article shall extend and apply to writs of attachment, execution, and garnishment issued out of any court of record." And, C.R.S. Sec. 13-54.5-103 provides that, with respect to garnishment proceedings, "the exemptions from garnishment required or allowed by law, including but not limited to exemptions provided by sections 13-54-102 and 13-54-104 and 15 U.S.C. sec. 1671 et seq., shall apply to all garnishments."
 
 
 [14]
 15 U.S.C.A. Sec. 1672 provides that:
 (a) The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.
 (b) The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.
 (c) The term "garnishment" means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt.
 15 U.S.C.A. Sec. 1673(a) provides:
 (a) Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed
 (1) 25 per centum of his disposable earnings for that week, or
 (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable,
 whichever is less. In the case of earnings for any period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).
 
 
 [15]
 The following dialogue is from the official transcript of the oral argument before the Supreme Court. Mr. Goldhammer was counsel for Local 9
 QUESTION: I take it procedures to execute your judgment, I suppose you can haul him in, haul him into court and ask him--find out what his assets are and things like that?
 MR. GOLDHAMMER: Sure.
 QUESTION: And can you get an order to pay over to--as soon as he gets the money, can you get an order to have him to pay it over?
 MR. GOLDHAMMER: There's a case in this Court called Hisquierdo v. Hisquierdo which said you can't do that. In that case there was an anti-alienation provision--
 QUESTION: That's just a runaround in the anti-alienation--
 MR. GOLDHAMMER: Yes. That makes the antialienation provision meaningless. If you want to rule that we can do that, we'd be more than happy to accept that ruling, but you'd have to overrule Hisquierdo v. Hisquierdo.
 
 
 [1]
 Thus, the Court noted that this circuit "appeared to recognize that the anti-alienation provision generally prohibits the garnishment of pension benefits as a means of collecting a judgment." 493 U.S. at 369, 110 S.Ct. at 684, 107 L.Ed.2d at 791. "The view that the statutory restrictions on assignment or alienation of pension benefits apply to garnishment is consistent with applicable administrative regulations...." 493 U.S. at 371-72, 110 S.Ct. at 685, 107 L.Ed.2d at 792
 
 
 [2]
 In 29 U.S.C. Sec. 1056(d)(3), Congress provided that the anti-alienation provision would not apply to qualified domestic relations orders
 
 
 [3]
 As noted by the majority opinion, the Colorado exemption statute is preempted by ERISA Sec. 514(a) since it relates to employee benefit plans covered by ERISA