BRISCOE, Circuit Judge,
concurring.
Stull raises five separate issues. First, that our decision in Entek I conflicted with the MLA. Second, that the Secretary of the Interior may not alter surface use rights in mineral leases. Third, that we should apply Chevron deference to a BLM adjudicatory decision. Fourth, that Stull’s constitutional rights to due process and equal protection will be violated if we do not reverse. And fifth, that the district court should have dismissed the case under Rule 19.
I agree that law of the case controls here to resolve most of the issues raised. Matters actually decided explicitly or implicitly become law of the case. Wilmer v. Bd. of Cty. Comm’rs, 69 F.3d 406, 409 (10th Cir. 1995) (citing Guidry v. Sheet Metal Workers Int’l Ass’n Local 9, 10 F.3d 700, 705 (10th Cir. 1993)). The balance of Stull’s issues fail because they have been waived or forfeited. I agree with the majority’s treatment of four of the five issues, and write only to more fully address Stull’s constitutional claims.
Stull argues violations of its constitutional rights to due process, Aplt. Br. at 30-35, and equal protection, id. at 35-37. As regards due process, Stull argues that it was entitled to notice of its rights and that “[a]ny re-interpretation of existing regulations and laws to take property rights” would violate due process. Id. at 30-31. Specifically, Stull argues that “[t]he SRHA did not provide notice that the government was reserving the right to cross the surface to access ... other property” and that the second reserved right “concern[ed] those reserved minerals” under the patented land, not other land. Id. at 31. Stull next says that the patent and the MLA did not give notice either. Id. Then Stull argues that the BLM gave no notice when it approved or altered the FRU Agreement *1242 or the regulations prescribing the standard unit agreement. Id. at 32-34. Lastly, Stull says “the failure to provide notice and an opportunity to be heard on the events concerning the FRU cannot be undone retroactively to justify a change in surface rights.” Id. at 35.
Stull then states that the Fifth Amendment guarantees equal protection—according to Stull, this means that the federal government may not “apply[] different standards to similarly situated individuals.” Id. It argues that this guarantee has been violated by our decision in Entek I because it “creates a conflict between the application of SRHA and MLA rights between the courts .in the Tenth Circuit and the Department of the Interior.” Id. at 36. It argues that “[s]uch differing standards applied to similarly situated parties violates equal protection.” Id. at 37.
Stull made a due process argument in its brief opposing summary judgment for En-tek: “Even if the United States had passed a law or regulation allowing a lessee of mineral rights to cross any surface within the FRU to reach a well on any other surface within the FRU (which it has not), such a law or regulation would violate Stull’s due process rights — ” Aplt. App. Vol. 36 at 1973. There, Stull argued that it “ha[d] a valuable surface access property right that it can sell to oil companies” and that “[t]o deprive Stull of that property right would violate ... due process_” Id. at 1974. Stull also briefly alluded to its due process rights in its response brief in Entek I. Entek I Aple. Br. at 20 (“Stull Ranches has not sold or otherwise conveyed crossing rights to Entek and there is no basis for judicially taking those rights.”). At face value, therefore, Stull made a due process argument to the district court. However, Stull’s arguments were conclusory and made no mention of how its due process rights were deprived. On appeal, Stull says it received no notice of its “change” in surface rights. Aplt. Br. at 35. But Stull did not mention a lack of notice as grounds for a due process challenge until its brief in this appeal. Thus, this argument is forfeited.
Stull has certainly forfeited the equal protection argument by failing to present the argument to the district court. Perhaps Stull could not have made the argument before our decision in Entek I because that decision had not yet issued. However, Stull could plainly have foreseen the possibility that we would reverse in Entek I and could have brought the argument to our attention. Importantly, Stull did not make the argument in its petitions for rehearing or certiorari. Perhaps if Stull had made the argument at that point, we or the Supreme Court could have addressed the issue. But at this point it is barred.[1]

. We did not explicitly or implicitly decide either constitutional issue in Entek I. Therefore the law of the case is inapplicable to both arguments (and Entek does not argue otherwise).